## M. G. JEFFRIES, ALIAS DOCK DIPPY, v. THE STATE.

### No. 4596. Decided October 31, 1917.

**1.—Local Option—Indictment.**

Where, upon trial of a violation of the local option law, the indictment followed approved precedent, the same was sufficient. Following Coursey v. State, recently decided.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence sustained a conviction there was no reversible error.

**3.—Same—Evidence—Bill of Exceptions.**

Upon trial of a violation of the local option law, there was no error in introducing in evidence the order of the Commissioners' Court ordering a prohibition election, and the order showing the publication of the result of said election; besides, the bills of exception in which defendant claimed a variance with the allegation in the indictment is not set forth therein. Following Doyle v. State, 59 Texas Crim. Rep., 60, and other cases.

**4.—Same—Continuance—Want of Diligence.**

Where, upon trial of a violation of the local option law, the application for continuance showed a want of diligence and that the absent witness could have been easily obtained, there was no error in overruling the same.

**5.—Same—Affidavits—Motion for New Trial.**

Where defendant filed affidavits after his motion for new trial was overruled and notice of appeal was duly entered, they must be stricken out on motion of the State.

**6.—Same—Affidavit—Substitution of Lost Affidavit.**

The State could not substitute the affidavit made by one of defendant's witnesses which was lost by having said witness make another affidavit. Therefore, appellant's motion to strike out said affidavit must be granted.

**7.—Same—Argument of Counsel—Requested Charge.**

Where, upon trial of a violation of the local option law, the county attorney indulged in some illegitimate argument, referring to defendant's reputation which was not in evidence, and to which the court promptly sustained objection, there was no reversible error in the absence of a requested charge to withdraw said argument.

Appeal from the District Court of Cooke. Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of a violation of the local option law; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Owen Davis* and *W. S. Moore,* for appellant.—On question of introducing orders of Commissioners Court, etc.: Carnes v. State, 99 S. W. Rep., 98; Smitham v. State, 53 Texas Crim. Rep., 173, 108 S. W. Rep., 1183; Bowman v. State, 99 S. W. Rep., 1164; Baty v. State, 53 Texas Crim. Rep., 432, 110 S. W. Rep., 449.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—The indictment herein alleged that appellant, on or about the 22nd day of March, 1917, unlawfully sold to Adam Dillinger intoxicating liquor in said county after prohibition had been adopted therein in 1910. He was convicted and his punishment assessed at the lowest prescribed by law.

The indictment, so far as the allegations of the prohibition election, the orders of the Commissioners Court, and the publication thereof are concerned, is exactly like the indictment in the case of Fump Coursey v. State, decided by this court on October 17th, in an opinion by Presiding Judge Davidson, wherein this court held that the indictment was valid. We adhere to that decision. It is useless to discuss the question in this case.

Dillinger, the alleged purchaser, swore positively that he bought a bottle of whisky from appellant as alleged in the indictment, and paid him one dollar therefor. He swore that the sale occurred in an alley back of a pool hall and restaurant in Gainesville, and that there was no one else present except him and appellant. He further swore that Pink Ozment was not present at the time, and that appellant did not at the time merely give him and Ozment a drink of whisky cut of a bottle.

The State proved up and introduced all of the orders of the Commissioners Court ordering the election, the canvass of the returns, and the declaration that prohibition had carried, and the order putting the law in force in that county and the proper publication thereof.

Tom Ford, the sheriff of Cooke County, testified that on or about March 23rd, by virtue of a search warrant for that purpose, he searched appellant's house and found sixty-seven pints and two quarts of whisky; that he found it in a closet kind of back in the wall; part of it was in a grip, part in the wall of the house, and part in a closet.

The sheriff took the liquor to his office at the time. Appellant did not disclaim ownership of any of it at the time, and never said any part of it was not his until he testified on the trial in this case.

Mr. Jones, the agent of the American Express Company of Gainesville, testified that on March 21st appellant received from said company twelve quarts of intoxicating liquor on the afternoon train of that date. Appellant made no denial of this.

Appellant himself testified and swore that on the occasion when the said witness Dillinger testified that he bought a bottle of whisky from him, that said Ozment was present, and he did not sell said witness any liquor but gave him and Ozment a drink of liquor at that time out of a bottle. He further had Braken, a horse trader, to testify that the day before the sheriff found that liquor in appellant's house, that he had put thirty-six pints of whisky therein, and his brother swore that at the same time he had put twenty-four pints therein, and they respectively testified that much of the liquor taken by the sheriff belonged to them, but neither had ever set up any claim to it or demanded possession thereof from the sheriff or anyone else.

Without doubt the testimony is amply sufficient to sustain the conviction, and, as stated, the jury assessed the lowest punishment.

Appellant's bill No. 4 shows that he objected to the introduction in evidence of the order of the Commissioners Court ordering a prohibition election, on the ground that it was immaterial and irrelevant, not supported by the indictment, and it constituted a variance from the allegations in the indictment. This is the substance of the whole bill. It does not give a copy of the order or any other data other than stated. His next bill shows that he objected to the introduction of the order showing, or tending to show, the publication of the said election. This is the whole of the bill, except his objections, that it was immaterial, irrelevant, not supported by any allegation in the indictment, and at variance with the allegations in the indictment. The order is not copied, and in no other way shown by the bill. By his next bill he objected to the Commissioners Court's order declaring the result of the prohibition election in said county. That order is not given or otherwise stated. There was no error by the court shown by either of these bills. Doyle v. State, 59 Texas Crim. Rep., 60; Wesley v. State, 57 Texas Crim. Rep., 277; Gibson v. State, 58 Texas Crim. Rep., 403; Hardy v. State, 52 Texas Crim. Rep., 420; Alexander v. State, 53 Texas Crim. Rep., 504, and other cases unnecessary to cite.

By another bill he complains of the court overruling his motion for a continuance. This motion was made because of the absence of said Pink Ozment. He alleged that he caused an application to be made, and a subpoena to be issued and served upon said witness. When, where and how this was done is not alleged, nor is it alleged or shown when the attendance of the witness was required. He alleged that he expected to prove by the witness that at the time of the alleged sale no sale was made, but that he, the defendant, gave to the prosecuting witness a drink of whisky, and that the witness will testify that he was present at the time at which the said sale was alleged to have taken place. The court qualified the bill, stating that "the court did not believe the statement in said application, and the subsequent affidavit of the witness verifies this belief." There is a further statement of the judge as to the application for a continuance, wherein he states that the attached affidavit of said witness Ozment shows that defendant's efforts to have him present were rather feeble. In connection with this motion to continue, appellant made a motion in this court for a certiorari requiring the clerk of the court below to send up properly certified copies of two affidavits, one by appellant and the other by Ozment. The clerk has sent up properly certified copies of these affidavits. They were both made and filed in the court below on May 31, 1917. The affidavit of appellant is to the effect that this case was first set for trial on May 7, 1917; that because his attorney had to be in Oklahoma at that time it was agreed that his case would be passed or postponed until May 14th, but that it was not reached for trial until May 16th; that after this agreement to pass or post-

pone he met said Ozment on the streets in Gainesville, and he, the witness, asked what about his case, and appellant told him it would not be tried on that day, but had been postponed; that the witness made no reply to that, and that there was no further conversation between them at that time, or any other time about the case until after the trial of it.   That he at no time told Ozment that his case had been continued.   The affidavit of Ozment was to the effect that he lived in Gainesville, and had lived there for years; that he was present with appellant and said Dillinger in an alley in Gainesville when Dillinger claims he bought a pint of whisky from appellant; that they all took a drink of whisky from a bottle that appellant had, but that no sale was made to Dillinger, and nothing said about one; that this was the only time he was ever present when the other two were at said place. That he was not present at the trial of this case, although he had been subpoenaed on appellant's behalf, and if he had been present he would have testified as shown above; that on the day the case was set for trial he met appellant on the streets of Gainesville and asked him what about his case, and that appellant either told him the case had been postponed or continued; that he was not sure which, but that he understood the case was continued; that he was not a lawyer and did not understand the difference between the words continued and postponed. He further swore, "I have made an affidavit at the instance of the county attorney, in which I stated that Jeffries told me that the case was continued, but I am not sure that he used the word continued. I stated in the affidavit to the county attorney merely my understanding of it."

There is also in the record another affidavit by Ozment wherein he swore: "My name is Pink Ozment. I live in Gainesville, Cooke County, Texas. I am thirty-seven years old and have known M. G. Jeffries, alias Dock Dippy, about ten years. I met M. G. Jeffries, alias Dock Dippy, about a week before his trial, and he told me that it had been continued. I was at home in Gainesville, Cooke County, Texas, the day he was tried, and they could have gotten me by sending after me or telephoning me. I was in the courtroom the next day after the trial when the motion for a new trial was made in the M. G. Jeffries, alias Dock Dippy case." This affidavit was sworn to and filed on June 12th. Appellant's attorney in oral argument, when this cause was submitted, stated, as we remember it, that this affidavit was a copy and intended to substitute another affidavit made by Ozment, evidently as stated by him in the other affidavit above given, which had been lost, and this latter affidavit was merely an attempt to substitute the lost one. He made a motion in this court to strike out this affidavit of Ozment copied just above because made and filed after court had adjourned. The State contends and has made a motion herein to strike out the other two affidavits above described, one by said Ozment and the other by appellant himself, which were made and filed on May 31st. The record shows that the court acted on the motion for a

new trial herein and overruled it on May 17th, at which time appellant. excepted and gave notice of appeal to this court, which was duly entered. It, therefore, appears clearly that the affidavits of Ozment and appellant, which the State moved to strike out, had neither been made nor filed, and, of course, could not have been known or acted upon by the court at the time he overruled the motion for a new trial; hence the State's motion to strike them out must be granted.

If the State had desired to substitute the affidavit of Ozment which he made, as he stated, before the county attorney, and it must have been at the time and before the motion for a new trial was acted upon, it could have done so in the court below by making proper motion therefor, serving it upon appellant and having it acted upon by the court before adjournment; but the State could not substitute that lost affidavit of Ozment by having him to make another and filing it after the court had adjourned as stated. Therefore, the appellant's motion to strike out that affidavit must be granted.

But, upon the whole, the record clearly shows that appellant used no diligence to have the witness Ozment attend. He lived right in Gainesville, and doubtless could have been obtained either by phone message or other subpoena issued for him, and his attendance secured in time for him to have testified in the trial. It seems that appellant was not so much seeking the attendance and testimony of the witness as he was for a ground to either continue his case or reverse it because of the absence of said witness. Clearly under the law his diligence to secure the attendance of the witness was wholly insufficient to entitle him to a reversal.

The only other question is a complaint by appellant in one of his bills of the remarks of the assistant county attorney in his opening argument to the jury, wherein he complains that said assistant county attorney said: "M. G. Jeffries, the defendant, has the reputation of being the king bee among the bootleggers of Cooke County." He promptly objected to this as improper. The court as promptly sustained his objections, and told the jury to disregard the remarks. The bill shows that thereupon said assistant county attorney turned to the jury and said, "Gentlemen, you know his reputation as well as I do." Appellant promptly objected to this, and the court as promptly sustained his objection and told the jury to disregard it. He complains of the further argument of said assistant county attorney wherein he claims he said: "The verdict of the jury in the Fump Coursey case struck terror to the souls of the bootleggers and you should do likewise in this case." Appellant objected and the court sustained his objections, and told the jury to disregard the remarks. The bill states: (Coursey had been found guilty on a prior day of the term for selling intoxicating liquors and his punishment assessed at two years, and some of the jurors in that case were members of the jury in this.) The court qualifies the bill as follows: "Fred Wankan, assistant county attorney, is a young practitioner, this being the first term of court in which he has ever appeared in contested cases. When the first remark

here complained of was made, I sustained the objection to it and instructed the jury not to consider it. When the second remark was made, I also sustained objection to it and instructed the jury not to consider it and told the jury there was no evidence whatever as to defendant's reputation, and admonished Wankan to discuss only the evidence and to stay in the record. No written charge was requested by defendant, as to these remarks, and defendant having received the lowest penalty, I am of the opinion that no injury resulted to defendant on account of these proceedings." Under the circumstances this does not present reversible error.

The judgment is affirmed.

*Affirmed.*